REED MFG. CO. v. SMITH & WINCHESTER CO. et al.

(Circuit Court, D. Connecticut. June 27, 1902.)

No. 1,040.

1. PATENTS—INFRINGEMENT—COLLAR-IRONING MACHINE.

The Shaw patent, No. 608,720, for a collar turning and ironing machine, was not anticipated, and is valid and entitled to a broad construction, as covering a pioneer invention. Claim 1, as so construed, *held* infringed by a machine made in accordance with the Asher patent, No. 627,889.

In Equity. Suit for infringement of letters patent No. 608,720, granted to W. C. Shaw, August 9, 1898, for a collar turning and iron-. ing machine. On final hearing.

H. C. Lord and James D. Dewell, Jr., for complainant.
Wm. E. Simonds, for respondents.

PLATT, District Judge. This case now comes before me on its merits on pleadings and proofs. Complainant is the owner of patent No. 608,720, granted August 9, 1898, to W. C. Shaw. One of the defendants is the manufacturer, and the other the selling agent, of the machine claimed to be manufactured under patent No. 627,889, granted June 27, 1899, to the defendant Asher. The question hinges entirely upon the first claim of the patent in suit, which is as follows:

"(1) In a collar turning and ironing machine, the combination of a curved, flange-shaped former, over which the collar is folded and curved into proper shape for wear, a grooved iron arranged opposite the former, and means for moving the grooved iron into engagement with the former and for moving one of said parts upon the other, substantially as set forth."

This claim was an evolution resulting from interference proceedings in the patent office. Basing his action upon the decision of the patent office in those proceedings, Judge Townsend granted a preliminary injunction. (C. C.) 103 Fed. 796. This order was appealed from, and reversed by the circuit court of appeals. 46 C. C. A. 601, 107 Fed. 719. The court says, on page 720, 107 Fed., and page 603, 46 C. C. A.:

"It is quite manifest that there is presented a substantial question as to infringement, which can be settled only upon construction of the patent, and

that requires a presentation of the state of the art and a history of the invention in the patent office."

Judge Townsend intimates, in his memorandum filed at the time of ordering the preliminary injunction, that the patent in suit was a pioneer patent. I can find nothing in the final proofs to lead my mind to any different conclusion. It is not apparent that the respondents, in their effort to establish anticipation, have been able to add anything of value to the specifications and claims embodied in patent to Martin H. Ryder for hat-curling machine, No. 287,865, dated November 6, 1883, and in the German patent to Rudolph Mindt, No. 24,731. Evidently they chose to use at the outset their best ammunition. These patents, as well as a fair résumé of the interference at the patent office, were before Judge Townsend at the early hearing, and he was of the opinion that the evidence was "insufficient to support the respondents' contentions of noninfringement and invalidity." If the history of the proceedings in the patent office interference has been given in greater detail, the contention of the complainant has been strengthened rather than weakened thereby. To quote again from Judge Townsend, "The essence of Shaw's invention is to provide a machine whereby collars can be laundered in a circular shape, fitted to the neck of the wearer, without breaking the edge of the collar," by which he means without injuring the fabric of the collar. It is quite clear that if a turnover collar was first starched and ironed flat, and then dampened upon the fold line, and placed upon the former to be ironed and polished ready for wear, it was, in the prior art, impossible to avoid either wetting the collar too much or not wetting it enough. If too much moisture was applied, the polish of the edge was lost. If too little was applied, the fabric was injured and the collar cracked. Shaw saw the situation, met the problem, and solved it. His machine, therefore, is novel and of great utility. The generic idea belongs to him, and, when two machines which accomplish that purpose are before us, it is idle to carp and criticise and stick in the bark as to methods and manner. Whether there are three or four elements in the claims; whether the word "opposite" refers to a portion of the imaginary circle which would be formed by an extension of the former, where the sadiron will remain when at rest, or whether it is used to describe the position of the sadiron when in use, as being above that portion of a circle which the former occupies; whether the means, considering the last portion of the combination as expressing a single function, or the assimilation of two functions, consists of the vertical and horizontal action of the levers at the pivotal point when they are attached, or the addition of the power which the hand, when applied to the levers, furnishes; whether "moving" and "guiding" are synonymous terms,—all these and other contentions seem to me to be extremely narrow and provocative of useless discussions. I agree with the complainant that it would be a queer freak of justice if he, after fighting out manfully in the patent office the question of priority in the conception of this novel and meritorious claim, should now be compelled to abandon to a contestant the fruits of his victory. It is beyond cavil that the broadest permissible construction shall be given to the language of a pioneer patent, to protect, if possible, the

patentee in the enjoyment of the invention to which he has given the first tangible expression.

A decree may be entered for an injunction and accounting upon the first claim of the patent in suit.